UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v.

RICO FREEMAN,

        Defendant.

17-CR-162
DECISION & ORDER

---

On May 3, the defendant, Rico Freeman, pleaded guilty to count one of the indictment, charging a violation of 21 U.S.C. § 846. Docket Item 81. While preparing for Freeman's sentencing scheduled for September 13, 2018, the Court discovered an error in the plea agreement and plea colloquy regarding the mandatory minimum term of supervised release. Docket Item 132. For that reason, and because Freeman was not happy with his assigned attorney, the Court appointed new counsel to represent him in reviewing the correct penalties and guidelines calculations and in considering whether to move to withdraw the plea. Docket Item 137. On February 18, 2019, Freeman moved to withdraw his plea. Docket Item 174. The government responded on April 9, 2019, Docket Item 183, and this Court heard oral argument on May 3, 2019, Docket Item 185.

For the reasons stated below, this Court denies Freeman's motion to withdraw his guilty plea.

## **BACKGROUND**

Freeman signed his plea agreement on May 3, 2018. Docket Item 80. The first paragraph of that agreement provided that the "minimum and maximum penalt[y]" Freeman faced included "a term of supervised release of at least 5 years and up to life." *Id.* The defendant's plea colloquy proceeded as though that five-year mandatory minimum term of supervised release was accurate.

> The Court: . . . [B]ecause supervised release of at least five years is mandatory in your case, and because imprisonment is mandatory, as well, you will be subject to supervised release for at least five years after your release from prison; do you understand that?
>
> The Defendant: Yes.
>
> . . .
>
> The Court: And do you understand that supervised release of at least five years is required after your release from prison?
>
> The Defendant: Yes.

Docket Item 181 at 18, 21. Based on the plea colloquy, the Court found that Freeman's guilty plea was "knowingly, voluntarily and intelligently made, with a full understanding of the nature of the charge, the consequences of the plea, and the defendant's constitutional rights." *Id.* at 44.

But there was a mistake: the actual mandatory minimum term of supervised release is ten years, not five. *See* 21 U.S.C. §§ 841(b)(1)(A). Because Freeman has a prior conviction for a serious drug felony and pleaded guilty to a conspiracy to distribute five kilograms or more of cocaine and 280 grams or more of cocaine base, the court must "impose a term of supervised release of at least **10 years** in addition to [the] term

of imprisonment." *Id.* (emphasis added). So counsel for both parties and the Court were mistaken during the plea colloquy.

After this Court adjourned sentencing but before Freeman filed his motion to withdraw his guilty plea, Congress passed the First Step Act of 2018. That change in the law reduced the mandatory minimum term of imprisonment that Freeman faces from twenty years to fifteen. *See* First Step Act of 2018, Pub L. No. 115-391, 132 Stat. 5194 (2018). The mandatory minimum term of supervised release that he faces remains the same, however: ten years.

As a result of the First Step Act and the mistake in the plea agreement, Freeman faces the same period of mandatory imprisonment and supervised release that he understood he faced at the time of his plea. He now faces a mandatory term of at least fifteen years' imprisonment and ten years' supervised release; at the time of his plea, he understood that the faced a mandatory term of at least twenty years' imprisonment and five years' supervised release. By coincidence, both equal a total term of twenty-five years of combined imprisonment and supervised release.

## DISCUSSION

Rule 11 of the Federal Rules of Criminal Procedure governs pleas. Rule 11(d) provides that a defendant may withdraw a plea of guilty "after the court accepts the plea, but before it imposes sentence if: . . . the defendant can show **a fair and just reason** for requesting the withdrawal." (emphasis added). "Fair and just reasons for withdrawal include inadequate Rule 11 plea colloquies." *United States v. Ortega-Ascanio*, 376 F.3d 879, 883 (9th Cir. 2004). Rule 11(b) requires that when taking a guilty plea, the Court inform the defendant and ensure that the defendant understands

3

"any maximum possible penalty, including imprisonment, fine, and term of supervised release" and "any mandatory minimum penalty," among other things. Finally, Rule 11(h) creates a safety valve for harmless error: "[a] variance from the requirements of this rule is harmless error if it does not affect substantial rights."

The defendant bears the burden of showing a fair and just reason for withdrawal. *United States v. Maher*, 108 F.3d 1513, 1529 (2d Cir. 1997). "To determine whether the defendant has proffered a 'fair and just reason' to justify withdrawal, a district court should consider, inter alia: (1) the amount of time that has elapsed between the plea and the motion; (2) whether the defendant has asserted a claim of legal innocence; and (3) whether the government would be prejudiced by a withdrawal of the plea." *United States v. Doe*, 537 F.3d 204, 210 (2d Cir. 2008). And the court should consider those criteria carefully since the public has a "strong interest in the finality of guilty pleas" and easily allowing their withdrawal will undermine an important event in the administration of justice. *United States v. Sweeney*, 878 F.2d 68, 70 (2d Cir. 1989).

Freeman offers three reasons for his request to withdraw his guilty plea. First, he argues that he is legally innocent of the crime to which he pleaded guilty. Docket Item 174 at 8. Second, he argues that his plea was coerced, not voluntary, and therefore invalid. *Id.* at 12. Finally, he argues that the error in the plea agreement and plea colloquy made his guilty plea not knowing and voluntary. *Id.* at 4. None of these are persuasive.

4

**I.     INNOCENCE**

Freeman argues that he is legally innocent of the charge to which he pleaded guilty because the quantities of drugs specified was incorrect. *Id.* at 9. He maintains that the quantities should have been lower and that the factual basis for the quantities with which he was charged—and to which he pleaded—relied on his codefendant's vague statement and anticipated trial testimony. *Id.* at 11-12. In response, the government notes that at his plea colloquy Freeman admitted under oath all the underlying conduct that he now challenges. Docket Item 183 at 12.

The government is correct: Freeman's sworn statements at his plea colloquy belie his current claim. During that proceeding, the prosecutor detailed the relevant conduct that the government would prove at trial to support count one, including that the amounts of drugs was "[a]pproximately 12 kilograms of cocaine and approximately 280 grams of cocaine base." Docket Item 181 at 24. Freeman agreed.

> MS. TOKASH: . . . Beginning in or before May 2016 and continuing to in or about June 2007, the exact dates unknown, in the Western District of New York and elsewhere, the defendant, Rico L. Freeman, did knowingly, willfully and unlawfully combine, conspire and agree with others known and unknown to possess with intent to distribute and to distribute 5 kilograms or more of a mixture or substance containing cocaine and 280 grams or more of a mixture or substance containing cocaine base, both Schedule II controlled substances.
>
> Intercepted wire communications established that the defendant and his co-conspirators were involved in a high-traffic and extremely profitable cocaine and cocaine base distribution network in the Western District of New York.
>
> The defendant obtained quantities of cocaine, usually in 9-ounce amounts each week, from a local source of supply during the course of this conspiracy.
>
> . . .

Approximately 12 kilograms of cocaine and approximately 280 grams of cocaine base are the amounts involved in the defendant's relevant conduct encompassed in Count 1 of the indictment, which could be readily proven by the government against the defendant.

. . .

THE COURT: So, Mr. Freeman, did you hear and understand everything that Ms. Tokash just said?

THE DEFENDANT: Yes, sir.

THE COURT: Is everything that she said about you and your conduct and your intent true and correct?

THE DEFENDANT: Yes, sir.

THE COURT: Ms. Tokash, how would the government prove those facts if this case were to go to trial?

MS. TOKASH: . . . Based on the totality of these witnesses' testimony, the government will prove that the defendant conspired to possess and possessed with intent to distribute and distributed 5 kilograms or more of cocaine and 280 grams or more of cocaine base.

. . .

THE COURT: Okay. So, Mr. Freeman, did you hear and understand everything Ms. Tokash just said now?

THE DEFENDANT: Yes, sir.

THE COURT: Do you disagree with anything she just said?

THE DEFENDANT: No, sir.

THE COURT: Are you pleading guilty because you did the things that the plea agreement says you did and that are charged in the indictment?

THE DEFENDANT: Yes, sir.

. . .

THE COURT: And were at least 5 kilograms of cocaine reasonably foreseeable to you as being within the scope of the agreement?

THE DEFENDANT: Yes, sir.

THE COURT: Were at least 280 grams of cocaine base reasonably foreseeable to you as being within the scope of the agreement?

THE DEFENDANT: Yes, sir.

*Id.* at 22-30.

What is more, the Court ensured that Freeman understood that he had the right to have a jury determine the amount of drugs at issue and that he knowingly waived that right:

THE COURT: . . . Mr. Freeman, you're agreeing to plead guilty to the charge against you, that is Count 1 of the indictment, and that alleges that you violated 21, United States Code, Section 846, conspiracy to distribute 5 kilograms or more of cocaine and 280 grams or more of cocaine base which is a felony.

The elements of the crime, that means what the government would be required to prove beyond a reasonable doubt if this case went to trial, are:

Number 1. That there was an agreement between two or more persons to commit a controlled substance felony offense.

Number 2. That you knew of the existence of the agreement.

Number 3. That you intended to participate in the unlawful agreement; and

Number 4. That at least 5 kilograms of cocaine or at least 280 grams of cocaine base were reasonably foreseeable to you as being within the scope of the agreement. Do you understand the nature of that charge?

THE DEFENDANT: Yes.

THE COURT: Do you understand the elements of the charge that I just went over?

THE DEFENDANT: Yes.

THE COURT: Have you discussed the charge and its elements with your lawyer?

7

>THE DEFENDANT: Yes, sir.
>
>THE COURT: Do you have any questions about the charge or about its elements?
>
>THE DEFENDANT: No, sir.
>
>THE COURT: Do you belive[sic] that if this case went to trial, the government would be able to prove beyond a reasonable doubt each of the elements of the crime to which you'd like to plead guilty?
>
>THE DEFENDANT: Yes, sir.
>
>THE COURT: Do you understand, Mr. Freeman, that if this case went to trial, the government would be required to prove to the trier of fact beyond a reasonable doubt that the quantity of drugs exceeded 5 kilograms of cocaine or 280 grams of cocaine base? In other words, you have the right to have a jury determine the total amount of the drugs charged; do you understand that?
>
>THE DEFENDANT: Yes.
>
>THE COURT: Do you waive your right to have a jury determine the amount of drugs charged in Count 1 of the indictment?
>
>THE DEFENDANT: Yes.

*See* Docket Item 181 at 14-16. So there is little doubt that Freeman understood and agreed under oath that he was admitting his involvement in a conspiracy to distribute at leave five kilograms of cocaine and at least 280 grams of cocaine base.

The Court was and is entitled to accept Freeman's sworn answers to the detailed questions posed at the plea colloquy. In fact, sworn responses like these "carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Freeman's "unequivocal admissions under oath" at the plea colloquy "contradict his unsupported assertions" now. *United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997). And there is no reason to accept what he asserts now over what he swore to earlier.

8

## II.     COERCION

Freeman also argues that he was coerced into pleading guilty because the government had indicted the mother of his child and he believed that if he pleaded guilty, she would receive some leniency. Docket Item 174 at 13. But even if what Freeman asserts amounted to coercion, his sworn statements at the plea colloquy again belie his claim.

The Court carefully inquired at the plea colloquy whether Freeman was subject to the very sort of coercion he now claims to have suffered.

> THE COURT: Other than what's contained in this written plea agreement, has anyone promised you -- has anyone made any promises, representations or guarantees of any kind to you in an effort to get you to plead guilty in this case?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: Other than what's contained in the written plea agreement and a general discussion of the sentencing guidelines with your lawyer, has anyone promised you leniency or a particular sentence or probation or any other inducement of any kind to get you to plead guilty?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: Has anyone attempted in any way to threaten you, threaten a family member, threaten anyone close to you to make you plead guilty?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: Is anyone forcing you to plead guilty?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: Whether you plead guilty is your decision, it's not your lawyer's decision. You should do what you want to do, not what you think your lawyer wants you to do, not what you think I want you to do, not what you think anyone wants you to do, it's what you want to do. Do you want to plead guilty?
>
> THE DEFENDANT: Yes, sir.

Docket Item 181 at 13-14.  Again, these sworn responses "carry a strong presumption of verity."  *Blackledge*, 431 U.S. at 74.  And again, there is no reason to accept what Freeman asserts now over what he swore to earlier.

III.     **MISTAKE IN THE PLEA AGREEMENT**

Finally, Freeman argues that the error in his plea agreement and plea colloquy regarding the mandatory minimum term of supervised release is a fair and just reason for him to withdraw the plea.  Docket Item 174 at 4, 8.

The Second Circuit has not determined whether misstating the mandatory minimum term of supervised release is harmless error.  But it has considered similar issues.  For example, in *United States v. Renaud*, 999 F.2d 622, 623 (2d Cir. 1993), the defendant's plea agreement and plea colloquy both stated that the ***maximum*** term of supervised release was one year when it was actually three years.  The Second Circuit suggested that such a mistake might not be harmless:

> We would ordinarily not consider an understatement of the supervised-release maximum, combined with the sentencing of the defendant to a supervised-release term longer than that of which he was advised, to be an error that is harmless. . . . In such circumstances, if the defendant wished to withdraw the plea of guilty upon learning of the correct maximum, or at least upon learning that the maximum was longer than the court had previously advised him, the district court should give him the opportunity to do so.

*Renaud*, 999 F.2d at 625.  But because Renaud did not want to withdraw his plea, the error was indeed harmless.

Similarly, during the plea colloquy in *United States v. Harrison,* 241 F.3d 289 (2d Cir. 2001), the court and counsel were all under the mistaken impression that the defendant was subject to a five-year mandatory minimum term of ***imprisonment***.  The Second Circuit held that in combination with other errors, that error was not harmless

because "in combination they cast doubt on whether [the defendant's] guilty plea was knowing and voluntary." *Harrison*, 241 F.3d at 295.

But neither of those cases answers the precise question before this Court. Unlike the mistake in *Harrison*, the error in Freeman's plea agreement concerned supervised release, not prison. And unlike the mistake in *Renaud*, the error here concerned a misstatement of the mandatory minimum term of supervised release, not the maximum.

Moreover, the Second Circuit has found that a mutual mistake about sentencing in the plea agreement may not be enough reason to permit the defendant to withdraw the plea. In *United States v. Rosen*, 409 F.3d 535, 548-49 (2d Cir. 2005), for example, the court held that a mutual mistake between the defendant and the prosecutor in the plea agreement regarding the guidelines calculations and adjustments did not provide enough reason to withdraw the plea. The court relied on the section in the plea agreement stating that the sentence imposed is in the sole discretion of the court and that a sentence different than the one stipulated in the plea agreement would not be a reason to withdraw the plea. *Id.* Those "express provisions with respect to the possibility of a mistaken prediction as to sentencing calculations" prevented rescission "on the ground of mutual mistake when that possibility has come to fruition." *Id.*

So the question is this: if the mistake in the plea agreement had not been made, would the defendant still have pleaded guilty? Stated another way, the question is whether the defendant has a reasonable argument that he would have changed his mind if, at the time of his plea, he had been told what turned out to be the correct information.

11

The Seventh Circuit answered that question in *United States v. Saenz*, 969 F.2d 294 (7th Cir. 1992), a case very similar to the one here. In *Saenz*, the district court had advised the defendant in the plea colloquy that "there would be a term of supervised release of four years to life." 969 F.2d at 295. But that was a mistake: the law required a minimum of eight years' supervised release, not four. Nevertheless, the Seventh Circuit found that mistake to fall within the harmless error exception to Rule 11 because the eight-year term of supervised release was within the range of four years to life that the defendant was told might be imposed. *Id.* at 298 ("the term of release falls within the range of the warnings Saenz received."). The court found that the mistake therefore did not affect the defendant's substantial rights.

> So long as the defendant is apprised of the maximum jail term, a failure to address the supervised release element of his sentence should not warrant *automatic* reversal. Nevertheless, if the term of supervised release plus the prison term (the maximum aggregate term of incarceration) exceeds the maximum prison term of which the defendant was advised, then the error is not harmless, and reversal is necessary.

*Id.* at 297. The Seventh Circuit asked whether the defendant would not have pleaded guilty if the error had not occurred; it held that the error did not matter one way or the other.

The actual term of supervised release to which Freeman may be sentenced is ten years to life, which is within the range about which he was informed at his plea colloquy: five years to life. In other words, when Freeman pleaded guilty, he was fully aware that he could be sentenced to ten years of supervised release or more. And Freeman was told that he could be sentenced up to life in prison as well as supervised release for life. Docket Item 181 at 16-19; *see also id.* at 34-35 (defendant acknowledges that he understands that regardless of Sentencing Guideline calculation,

the Court can sentence him "up to the maximum penalties that we discussed earlier" and that he cannot withdraw his plea based on the sentence the Court imposes.). So as in *Saenz*, the error was harmless.

But there is an even more fundamental reason why the error here was harmless. When there is an error in the plea agreement and colloquy about the term of supervised release, the Second Circuit has suggested that the court should look to the combined "total sentence of imprisonment and supervised release." *United States v. Andrades*, 169 F.3d 131, 134 (2d Cir. 1999) (citing *United States v. Bachynsky*, 934 F.2d 1349, 1360-61 (5th Cir. 1992) (en banc) *modified by United States v. Johnson*, 1 F.3d 296, 300-01 (5th Cir. 1993)). Here, the total mandatory minimum term of imprisonment plus supervised release to which Freeman can be sentenced was not affected by the error. Because of the fortuity of the First Step Act, which lowered the mandatory minimum term of imprisonment for his offense, Freeman remains subject to at least twenty-five years of incarceration plus supervised release. The total mandatory minimum period of imprisonment and supervised release is unchanged.

In fact, Freeman actually faces a more favorable mandatory minimum sentence than the one he agreed to in his plea agreement and his plea colloquy. At his plea, Freeman was told that the Court was required to sentence him to *twenty years' imprisonment and five years' supervised release.* Docket Item 181 at 21. As it turns out, the Court is required to sentence him to *fifteen years' imprisonment and ten years' supervised release.* Docket Item 161 at 25-26. So Freeman still is subject to twenty-five years, but he trades five years' mandatory imprisonment for five years' mandatory

13

supervised release. And so there is no reasonable argument that Freemen would not have pleaded guilty if he knew then what he knows now.

For those reasons, the misstatement of the mandatory minimum term of supervised release in Freeman's plea was no more than "a minor and technical violation of Rule 11 which amounts to harmless error." *Andrades*, 169 F.3d at 133 (quoting *Renaud*, 999 F.2d at 624). Because Freeman is subject to the same period of imprisonment plus supervised release about which he was informed at his plea, and because the balance of that time has actually changed in his favor, the error can hardly be said to affect his substantial rights. Therefore the error is harmless, and there is no fair and just reason to allow Freeman to withdraw his guilty plea.[1]

## **CONCLUSION**

Freeman has not shown any fair and just reason to withdraw his plea. His motion is therefore DENIED.

SO ORDERED.

Dated: May 16 , 2019
Buffalo, New York

                                        *s/ Lawrence J. Vilardo*
                                        LAWRENCE J. VILARDO
                                        UNITED STATES DISTRICT JUDGE

---

[1] That is especially so considering the length of time after his plea agreement that Freeman asserted that claim and sought to withdraw his plea. *See Doe*, 537 F.3d at 210. Indeed, as the government notes, Freeman requested several extensions of time—from October 2018 through February 2019—while he decided whether to file his motion. The government suggests that this delay was tactical. *See* Docket Item 183 at 7. Regardless, almost ten months elapsed between his plea and its requested withdrawal, *compare* Docket Item 81 (filed May 3, 2018) *with* Docket item 174 (filed Feb. 18, 2019), and about five months from notice of the error until the request to withdraw, Docket Item 128 (minute entry from Sept. 10, 2018).